**Martin E. O'BOYLE, Appellant,**

v.

**JIFFY LUBE INTERNATIONAL, INC.**

**No. 88–1582.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 2, 1988.

Decided Jan. 25, 1989.

David M. Doret (argued), Anthony R. Twardowski, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for appellant.

Hugh J. Hutchison (argued), Sprecher, Felix, Visco, Hutchison & Young, Philadelphia, Pa., for appellee.

Before SEITZ, STAPLETON and COWEN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This case arises from a dispute over the obligations created by a development agreement between Martin E. O'Boyle, a real estate developer, and Jiffy Lube International, Inc. ("Jiffy Lube"), a corporation engaged in the business of operating facilities which provide automotive oil change and lubrication services to consumers. The issues before us on appeal are one, whether the development agreement can be construed or interpreted to create obligations to O'Boyle which were allegedly breached by Jiffy Lube, and two, whether the complaint filed by O'Boyle adequately set forth claims that Jiffy Lube breached these obligations. Because we conclude that the district court erred in its construction of both the complaint and the agreement, we will reverse the order of the district court dismissing the bulk of the claims raised in the complaint.

## I.

Jiffy Lube and O'Boyle agreed to the terms of a contract in November of 1985 which stated that Jiffy Lube would grant O'Boyle the right to develop ten minute oil change facilities having an aggregate value of $20,000,000 for Jiffy Lube.[1] In relevant part, the agreement provided:

### DEVELOPMENT AGREEMENT

AGREEMENT made this 15th day of November, 1985 between JIFFY LUBE INTERNATIONAL, INC., a corporation formed under the laws of the State of Nevada ("Jiffy Lube") and MARTIN E. O'BOYLE ("O'Boyle").

### WITNESSETH

Jiffy Lube desires to grant to O'Boyle the right, for a limited period of time, to build and lease facilities in the United States of America with a total aggregate cost of no less than Ten Million Dollars ($10,000,000.00) or Twenty Million Dollars ($20,000,000.00), as provided below.

O'Boyle desires to perform such services for Jiffy Lube.

NOW THEREFORE, the parties hereto, for and in consideration of the foregoing, the covenants set forth below, the sum of Ten Dollars ($10.00) paid by each party to the other, and intending legally to be bound hereby, agree as follows:

1. *Definitions.* For the purposes of this Agreement, the following terms shall have the meanings set forth below:

. . . .

(e) "Development Amount" shall mean the sum of Ten Million Dollars ($10,000,-000.00), unless O'Boyle shall timely exercise the Renewal Option, in which event "Development Amount" shall mean the

---

1. The agreement initially provided that O'Boyle would have the right to develop facilities having a value of $10,000,000, but also provided for a renewal option, which was exercised by O'Boyle, which increased the aggregate value of the facilities to be developed to $20,000,000.

sum of Twenty Million Dollars ($20,000,-000.00).

. . . .

(ff) "Term of this Agreement" shall mean the period commencing as of the date of this Agreement and ending on the sooner to occur of (i) the Term Ending Date and (ii) the date on which Jiffy Lube shall have entered into Lease(s) with Developer(s) under which the aggregate amount of the Project Costs exceed the Development Amount.

2. *Procedures.* During the Term of this Agreement Jiffy Lube agrees to give O'Boyle the opportunity to provide Facilities to Jiffy Lube which are acceptable to O'Boyle and as to which the aggregate Project Costs shall be no less than the Development Amount. During the Term of this Agreement the following procedures shall be followed by Jiffy Lube and O'Boyle for the purpose of giving to O'Boyle the opportunity to provide such Facilities to Jiffy Lube (and O'Boyle and Jiffy Lube agree to cooperate with each other in this regard):

(a) If at any time during the Term of this Agreement O'Boyle locates a parcel of land which O'Boyle deems suitable for a Facility, O'Boyle shall give to Jiffy Lube a written notice ("O'Boyle Site Designation Notice") specifying the location, price and size of such parcel of land. Jiffy Lube shall, within fifteen (15) days after receipt of the O'Boyle Site Designation Notice, give to O'Boyle written notice stating whether Jiffy Lube accepts or rejects the parcel of land designated in such O'Boyle Site Designation Notice; and acceptance of such parcel of land shall constitute Jiffy Lube's and O'Boyle's agreement to enter into a Lease for such parcel of land pursuant to the provisions of subsection 2(f)(ii), below (if O'Boyle is able to obtain an O'Boyle Obtained Agreement of Sale for such parcel of land pursuant to the provisions of subsection 2(d), below). During the term of this Agreement, O'Boyle shall not offer the opportunity to acquire or lease any parcel of land which O'Boyle deems suitable for a Facility to any other party engaged in the business of operating ten minute oil change facilities unless and until O'Boyle shall first have included such parcel of land in an O'Boyle Site Designation Notice and unless and until Jiffy Lube shall have failed to accept or reject such parcel of land within the fifteen (15) day time period specified above in this subsection 2(a).

(b) If Jiffy Lube desires to acquire a Facility and it has located a specific parcel of land on which it desires such Facility to be located, Jiffy Lube shall give to O'Boyle a written notice ("Jiffy Lube Location Designation Notice") specifying the location, the intended purchase price and the size of such parcel of land. Within thirty (30) days after receipt of a Jiffy Lube Location Designation Notice, O'Boyle shall give to Jiffy Lube written notice whether O'Boyle accepts or rejects the parcel of land designated in such Jiffy Lube Location Designation Notice; and acceptance of such parcel of land shall constitute Jiffy Lube's and O'Boyle's agreement to enter into a Lease for such parcel of land pursuant to the provisions of subsection 2(f)(ii), below (if O'Boyle accepts an assignment of a Jiffy Lube Obtained Agreement of Sale for such parcel of land or if O'Boyle is able to obtain an O'Boyle Obtained Agreement of Sale for such parcel of land). If O'Boyle does not timely give to Jiffy Lube written notice of O'Boyle's acceptance of the parcel of land designated in such Jiffy Lube Location Designation Notice, O'Boyle shall be deemed to have rejected the right to develop a Facility on such parcel of land.

App. at 9–18.

On January 13, 1988, O'Boyle filed a complaint in the district court, which, in relevant part, alleged the following:

### The Dispute

5. On November 5, 1985, O'Boyle and Jiffy Lube entered into a written Development Agreement (hereafter "Agreement") pursuant to which Jiffy Lube granted to O'Boyle the right to build and lease facilities within the United States of America for the use, operation or oc-

cupancy by Jiffy Lube in its business. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

. . . .

8. Under Section 2 of the Agreement, Jiffy Lube was obligated to give O'Boyle during the Term of the Agreement "the opportunity to provide facilities to Jiffy Lube which are acceptable to O'Boyle and as to which the aggregate Project Costs shall be no less than the Development Amount." Agreement, Section 2.

. . . .

10. Jiffy Lube was thus obligated under the Agreement to submit to O'Boyle, by November 15, 1989, facilities with a total aggregate Project Cost of not less than Twenty Million Dollars ($20,000,-000.00).

11. To date, O'Boyle has completed for Jiffy Lube under the Agreement only five (5) facilities, with a total aggregate Project Cost of $2,841,466.03. In addition, O'Boyle is presently working on one other Jiffy Lube facility, which is in the pre-construction stage. The total Project Cost for this facility is not expected to exceed $550,000.

12. Jiffy Lube has not submitted to O'Boyle any additional facilities under the Agreement since August, 1986.

13. O'Boyle has contacted Jiffy Lube on numerous occasions requesting that additional facilities be submitted so that the terms of the Agreement might be fulfilled. Jiffy Lube has not honored these requests.

14. At O'Boyle's urging, on April 9, 1987, O'Boyle met with, among others, Edward Kelley, Vice President of Jiffy Lube and President of the Eastern Region of Jiffy Lube, to discuss O'Boyle's concerns regarding Jiffy Lube's performance under the Agreement. Mr. Kelley advised O'Boyle at this meeting that the Agreement was no longer deemed economically suitable from Jiffy Lube's standpoint and, therefore, no further facilities would be submitted to O'Boyle under the Agreement.

15. On April 21, 1987, counsel for O'Boyle sent to Jiffy Lube a written request for retraction by Jiffy Lube of its repudiation of the Agreement. A copy of said letter is attached hereto as Exhibit "C" and incorporated herein by reference.

16. Jiffy Lube has failed to retract its repudiation and indeed, in a letter from Arnold Janofsky, Vice President–Legal, has affirmed its intention not to submit further facilities to O'Boyle under the Agreement. A copy of this letter is attached hereto as Exhibit "D" and incorporated herein by reference.

17. O'Boyle has fully performed all terms and conditions of the Agreement and has at all times been ready, willing and able to render full performance to Jiffy Lube under the Agreement.

18. The aforesaid acts of Jiffy Lube constitute an anticipatory breach and repudiation of the Agreement, preventing O'Boyle from further performing under said Agreement and from receiving further payments from Jiffy Lube thereunder.

19. As a result of Jiffy Lube's refusal to honor the Agreement, O'Boyle has been wrongfully deprived of the opportunity to realize substantial profits under the Agreement which, had Jiffy Lube fulfilled its obligations during the four-year term of the Agreement, would have exceeded $10,000,000.00, and has suffered or will suffer additional substantial consequential and other damages.

. . . .

21. In addition to the foregoing, Jiffy Lube executed certain leases whereunder it was to rent various premises from O'Boyle or his nominees which Jiffy Lube had agreed to sell to O'Boyle or his nominees. In breach of its contractual obligations, Jiffy Lube has failed to proceed with these transactions, causing O'Boyle to suffer further, and substantial, financial losses.

App. at 4–7.

Jiffy Lube moved, pursuant to Rule 12(b)(6), to dismiss the claims raised by the complaint for failure to state a claim upon

which relief can be granted. The district court granted Jiffy Lube's motion as to all claims other than those raised in paragraph twenty-one of the complaint.[2] The court construed the complaint to have alleged that "Jiffy Lube effected an anticipatory breach of the Agreement by failing to submit to O'Boyle any facilities since August of 1986." App. at 118.

The court then examined the contract, which it found did not set forth either any requirement that Jiffy Lube submit proposed facilities to O'Boyle, or any obligation that Jiffy Lube give O'Boyle a right of first refusal regarding sites it desired to develop. App. at 118. Since, under the district judge's reading of the complaint and the contract, O'Boyle had not alleged a viable cause of action regarding the development agreement, he dismissed O'Boyle's claims, except those asserted in paragraph twenty-one of the complaint, by order entered July 15, 1988.

On July 22, 1988, O'Boyle filed a notice of voluntary dismissal, pursuant to Fed.R. Civ.P. 41(a)(1), voluntarily withdrawing and dismissing, without prejudice, the claims raised in paragraph twenty-one. App. at 121. O'Boyle filed a notice of appeal on July 26, 1988. App. at 123.

## II.

■ After this appeal was filed, we raised, *sua sponte*, the issue of our jurisdiction to hear this appeal. O'Boyle argued that we have jurisdiction under 28 U.S.C. § 1291 (1982), on the basis that the district court's order was a final order since he had agreed to voluntarily dismiss the claims raised in paragraph twenty-one, and the district court had dismissed all claims except those raised in paragraph twenty-one. Jiffy Lube, in turn, argued that we do not have jurisdiction over this appeal because O'Boyle had not finally abandoned the paragraph twenty-one claims. O'Boyle, in his initial briefs, had attempted to condition his voluntary dismissal of these claims on our acceptance of jurisdiction over his appeal.

While this procedure raises interesting issues of appellate jurisdiction, we need not resolve those issues here. In his reply brief, O'Boyle agreed to unconditionally withdraw with prejudice the claims raised in paragraph twenty-one in order to remove any doubt about our jurisdiction to hear his appeal. Appellant's Reply Brief at 1–2. Since there is no doubt that the district court order finally dismissed the remainder of the claims raised in O'Boyle's complaint, we have jurisdiction over this appeal under 28 U.S.C. § 1291. *See Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1156 (3d Cir.1986), (except in a few specific situations not applicable here, a notice of appeal from a non-final order will take effect when, due to subsequent events, the previous non-final order is rendered final), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987). Our review of the district court's dismissal of claims under Fed. R.Civ.P. 12(b)(6) is plenary.

## III.

■ As we read the development agreement, Jiffy Lube and O'Boyle clearly agreed that Jiffy Lube was granting O'Boyle the opportunity to develop sites for Jiffy Lube having a value of at least $20,000,000.00. While we agree with the district court that Jiffy Lube was not expressly obligated to submit to O'Boyle any particular number of proposed sites, it is also true that O'Boyle was not expressly obligated to submit to Jiffy Lube any particular number of proposed sites.

The agreement, therefore, contemplated that a certain minimum volume of work would be done by O'Boyle for Jiffy Lube, but did not expressly apportion responsibility between the parties for taking the steps necessary to meet that minimum. It is significant, however, that the agreement contains what amounts to an express "good faith" clause in section two of the contract. In section two, the parties agreed that "[d]uring the Term of this Agreement the following procedures shall be followed by Jiffy Lube and O'Boyle for the purpose of

---

**2.** Paragraph 21 alleges that Jiffy Lube breached certain leasing agreements it had with O'Boyle. The district court did not dismiss the claims made in paragraph 21, holding that those claims did state a cause of action. App. at 118–19.

giving to O'Boyle the opportunity to provide such Facilities to Jiffy Lube (*and O'Boyle and Jiffy Lube agree to cooperate with each other in this regard*)." App. at 16 (emphasis added).

It is also significant that the parties agreed in section 2(b) that "[i]f Jiffy Lube desires to acquire a Facility and it has located a specific parcel of land on which it desires such Facility to be located, Jiffy Lube *shall* give to O'Boyle a written notice ... [and within thirty days] O'Boyle *shall* give to Jiffy Lube written notice whether O'Boyle accepts or rejects the parcel of land." App. at 17 (emphasis added). We find that the district court erred when it construed the agreement to 1) not obligate Jiffy Lube to submit to O'Boyle any sites, and 2) not grant O'Boyle a right of first refusal on those sites Jiffy Lube did decide to develop.

█ We also find that the district court erred when it construed O'Boyle's complaint to only set forth a claim that Jiffy Lube breached an obligation to submit facilities to O'Boyle. While the complaint does focus on this allegation, it also fairly sets forth the more general allegation that Jiffy Lube has anticipatorily breached the entire agreement. O'Boyle did affix and incorporate a copy of the agreement to his complaint, *see* Fed.R.Civ.P. 10(c), and after setting forth the factual predicate for his claims, alleged that Jiffy Lube's actions constituted an anticipatory breach of the agreement.

This allegation was adequate to set forth a general claim that Jiffy Lube has anticipatorily breached the entire agreement. It is a settled rule that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Leone v. Aetna Casualty & Sur. Co.*, 599 F.2d 566, 567 (3d Cir.1979) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The federal practice requires only a "short and plain statement of the claim." Fed.R. Civ.P. 8(a). Indeed, Professors Wright and Miller note that

> [t]he complaint should not be dismissed merely because plaintiff's allegations do

not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.

C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357, at 601–02 (1969) (footnotes omitted).

We agree with this statement of the law, and find that the district court erred when it limited its analysis to O'Boyle's argument that Jiffy Lube was required to submit a sufficient number of proposed sites to meet the $20,000,000.00 minimum. The district court should also have considered O'Boyle's claim that Jiffy Lube's actions constituted a general anticipatory breach of the agreement.

## IV.

We will reverse the order of the district court dismissing the claims raised by O'Boyle's complaint, and will remand this case to the district court for further proceedings in accordance with this opinion.