**Karen I. COYNE**

v.

**ALLSTATE INSURANCE COMPANY.**

No. 91–3574.

United States District Court, E.D. Pennsylvania.

Aug. 6, 1991.

---

674

Roger J. Harrington, O'Brien and O'Brien, Philadelphia, Pa., for plaintiff.

Joseph K. Hetrick, Dechert, Price & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM

LUDWIG, J.

In this action on a homeowner's insurance policy, defendant Allstate Insurance Company is alleged, in count two, to have acted in bad faith in denying coverage for plaintiff's property damage claim. 42 Pa. C.S.A. § 8371.[1] Defendant moves to dismiss this count, asserting that § 8371 cannot be applied retroactively, is unconstitutionally vague, and violates due process of law. Fed.R.Civ.P. 12(b)(6).[2] Jurisdiction is diversity. 28 U.S.C. § 1332.

### I.

The following facts are undisputed:

Effective June 9, 1990 plaintiff Karen Coyne acquired an Allstate "Deluxe Homeowner's Policy." Complaint ¶ 3; pltf. exh. A. On September 12, 1990 her home was damaged when a water heater ruptured, thereby extinguishing the flame in the oil burner and causing oil to flow into the already flooded basement.

---

1. In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
   (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
   (2) Award punitive damages against the insurer.
   (3) Assess court costs and attorney's fees against the insurer.

42 Pa.C.S.A. § 8371.

2. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *O'Boyle v. Jiffy Lube International, Inc.,* 866 F.2d 88, 93 (3d Cir.1989).

Defendant Allstate Insurance Company denied complete coverage of the claim, explaining that "damage from the water which escaped from the water heater is covered.... However, any contamination of the dwelling caused by the toxic properties of the oil is specifically excluded under the policy." Pltf. exh. F, November 7, 1990 letter from Allstate claim representative.[3] In response, plaintiff, through counsel, disputed Allstate's view of the insurance policy and of Pennsylvania law.[4] After Allstate's further denial of coverage for the portion of the loss attributable to the heating oil,[5] this lawsuit followed.

## II.

Defendant first argues that § 8371 does not apply to this action, plaintiff's insurance policy having been issued and amended before July 1, 1990, the act's effective date. Def. mem. at 4–9. It maintains that the bad faith statute, if applied retroactively, would impair or alter Allstate's vested rights and contractual obligations under the insurance policy and would violate the prohibition of the Pennsylvania and United States Constitutions against any "law impairing the obligation of contracts."[6] Def. mem. 7–9. This contention cannot be upheld.

Although the existence of an insurance contract is a prerequisite to the enforcement of § 8371 and the insurer's conduct must be evaluated in light of the contract's provisions, plaintiff's bad faith claim is not based on the policy of insurance. The law proscribes "acting in bad faith toward the insured." 42 Pa.C.S.A. § 8371. It is defendant's alleged conduct—all of which occurred after the act's effective date—that forms the actionable gravamen of count two. The application of that law does not alter the insurance policy's substantive requirements, interfere with the insurer's contractual rights, or otherwise impair the parties' obligations. While an insurer has the right to rely upon the substantive provisions of its contractual policy, it has never had the right to act in bad faith toward the insured.[7] It cannot rely on contractual language agreed to before the effective date of the statute in order to insulate itself from statutory liability for bad faith conduct alleged to have occurred after that date.

> Retrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted.

*Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313, 1314 (1976) (quoting *Smith v. Fenner*, 399 Pa. 633, 641, 161 A.2d 150, 154 (1960)). *See also Hargreaves v. Mid–Valley School District*, 40 Pa.Cmwlth. 110, 396 A.2d 894, 897 n. 2 (1979) ("[W]here a vested right or a contractual obligation is not in-

---

**3.** Defendant relied on Section I, ¶ 12 of the policy: Allstate does not cover "[t]he discharge, dispersal, release, or escape of vapors, fumes, acids, toxic chemicals, toxic liquids or toxic gases, waste materials or other irritants, contaminants or pollutants." Pltf. exh. A.

**4.** *See* pltf. exh. G, February 27, 1991 letter from plaintiff's counsel to Allstate claim representative ("Allstate's position that loss caused by contamination will not be paid ... is an incorrect statement of the policy and the law in Pennsylvania.... After you and your legal counsel have reviewed the case law applicable to this claim, I am confident that you will decide to honor all loss and damage sustained by Ms. Coyne at her property on September 12, 1990").

**5.** *See* pltf. exh. H, April 9, 1991 letter from Allstate claim representative to plaintiff's counsel ("Allstate would accept liability for all dam-

age that ensued as a result of an accidental water discharge ... including any damage caused by the oil that did not involve its toxic properties, which is not covered").

**6.** U.S. Const. art. I, § 10; Pa. Const. art. I, § 17.

**7.** *See, e.g., D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966, 969 (1981) (citing the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171.4 (Supp.1980)) ("[O]ur Legislature has ... made sweeping efforts to curb the bad faith conduct"); *Hall v. Brown*, 363 Pa.Super. 415, 526 A.2d 413, 415 (1987), *appeal denied*, 522 Pa. 624, 564 A.2d 916 (1989) ("It is settled law that an insurer may be held liable for the entire amount of the judgment against its insured, regardless of the policy's limits, if in handling the claim the insurer acted in bad faith in the discharge of its contractual duties").

volved, 'an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date....' *Creighan v. City of Pittsburgh,* 389 Pa. 569, 575, 132 A.2d 867, 871 (1957)").

So viewed, § 8371 may be applied to post-July 1, 1990 conduct even though the policy was issued before that date. Five of the seven members of this court who considered this issue have so held, and this appears, for the reasons stated, to be the better analytical view. *See McGrath v. Federal Insurance Co.,* 1991 WL 117391, 2 (E.D.Pa. June 25, 1991); *Shamusdeen v. Hartford Insurance Co.,* 1991 WL 108675 (E.D.Pa. June 17, 1991); *Williams v. State Farm Mutual Automobile Insurance Co.,* 763 F.Supp. 121, 127 (E.D.Pa.1991); *Danton v. State Farm Mutual Automobile Insurance Co.,* 1991 WL 52794, 2 (E.D.Pa. April 5, 1991); *Sutton v. Home Insurance Co.,* 1991 WL 16635, 2 (E.D.Pa. Feb. 8, 1991); *Liberty Mutual Insurance Co. v. Paper Manufacturing Co.,* 753 F.Supp. 156, 157 (E.D.Pa.1990); *Wazlawick v. Allstate Insurance Co.,* 1990 WL 294273, 2 (E.D.Pa. Sept. 28, 1990). *Contra McAlister v. Sentry Insurance Co.,* 1991 WL 102973, 11 (E.D.Pa. June 11, 1991); *Bryant v. Liberty Mutual Insurance Co.,* 1990 WL 223126, 5 (E.D.Pa. Dec. 20, 1990).

### III.

■ Defendant next argues that the failure of § 8371 to define "bad faith" renders it unconstitutionally vague. This challenge must overcome—

[t]he strong presumption of constitutionality enjoyed by acts of the General Assembly and the heavy burden of persuasion on the party challenging an act

... so often stated as to now be axiomatic. Legislation will not be invalidated unless it clearly, palpably, and plainly violates the Constitution, and any doubts are to be resolved in favor of a finding of constitutionality.

*Consumer Party of Pennsylvania v. Commonwealth of Pennsylvania,* 510 Pa. 158, 507 A.2d 323, 331–32 (1986) (quoting *Pennsylvania Liquor Control Board v. The Spa Athletic Club,* 506 Pa. 364, 485 A.2d 732 (1984)). *See also National Wood Preservers, Inc. v. Commonwealth of Pennsylvania,* 489 Pa. 221, 414 A.2d 37, 44 (1980) ("It is fundamental to our jurisprudence that enactments of the Legislature are clothed with a presumption of constitutional validity, and that appellants, by claiming that an act is unconstitutional, carry a heavy burden of proof"); 1 Pa. C.S.A. § 1922(3) ("In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used ... (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth").

### A.

The familiar principles that relate to unconstitutional vagueness have been set out authoritatively:

It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors [8] free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.

*Giaccio v. State of Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447 (1966).[9]

whether labeled "penal" or not must meet the challenge that it is unconstitutionally vague. *Giaccio,* 382 U.S. at 402, 86 S.Ct. at 520. Punitive damages "have been described as quasi-criminal." *Pacific Mutual Life Insurance Co. v. Haslip,* —— U.S. ——, ——, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991).

---

8. Under § 8371, the issue of bad faith is determined by the trial judge. Submission to a jury is not authorized by the statute.

9. Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process, and this protection is not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute. So here this state Act

[T]o sustain [a vagueness] challenge, the complainant must prove that the enactment is vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). Such a provision simply has *no* core." *Smith v. Goguen,* 415 U.S. 566, 578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974).

. . . . .

These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

*Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.,* 455 U.S. 489, 495 n. 7, 498–99, 102 S.Ct. 1186, 1191 n. 7, 1193, 71 L.Ed.2d 362 (1982) (emphasis in original, footnotes omitted). *See also Grayned v.*

*City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

### B.

This constitutional challenge to § 8371 appears to be of first impression. However, Pennsylvania statutes, cases, and rules of statutory construction provide substantial guidance.[10]

As expressed in Pennsylvania rules of statutory construction:

> Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa.C.S.A. § 1903.

In the insurance context, the phrase "bad faith" has acquired a peculiar and universally acknowledged meaning.

> *Insurance.* "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Black's Law Dictionary 139 (6th ed. 1990) (citations omitted). *See, e.g., Washington v. Group Hospitalization, Inc.,* 585 F.Supp. 517, 520 (D.D.C.1984) ("Many jurisdictions have recognized a cause of action in tort for the bad faith refusal of an insurer to pay.... To recover under the tort of bad faith refusal to pay, plaintiff must show that defendant did not have a reasonable basis for denying benefits under the policy and that it knew or reckless-

---

**10.** *See, e.g., Waters v. McGuriman,* 656 F.Supp. 923, 926 (E.D.Pa.1987) ("The parties represent that the Borough's ordinance has never been challenged and this Court has found no indication that any state court or enforcement agency has construed Ordinance 942(F). However, there are other 'loitering' ordinances and statutes which have been challenged in the Pennsylvania courts.... To the extent that the construction of the challenged ordinances and statutes are relevant to the construction of the ordinance at issue, they will be considered").

ly disregarded its lack of a reasonable basis when it denied the claim"); Appelman & Appelman, *Insurance Law & Practice* § 1612 at 368 (1967 and Supp.1990) (citing cases) ("[B]ad faith means any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent").

So defined, the concepts embodied in the phrase "bad faith" are not so vague and standardless that insurers are left "uncertain as to the conduct it prohibits or leaves judges ... free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio*, 382 U.S. at 402–03, 86 S.Ct. at 520–21. Nor is the statute vague "in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). The statute merely leaves to commonly acknowledged definition a concept that should be understood and appreciated by the legal community and the insurance industry as well as by the courts.

Even if the particular concepts encompassed within "bad faith" were not part of a common legal lexicon, the parameters of § 8371. may be discerned by reference to analogous Pennsylvania insurance law. *See* 1 Pa.C.S.A. § 1921 ("When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters ... (5) ... other statutes upon the same or similar subjects").

The Pennsylvania Unfair Insurance Practices Act delineates the "unfair or deceptive acts or practices" that it proscribes. Among these are:

(i) Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.

(ii) Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies.

.　　.　　.　　.　　.

(iv) Refusing to pay claims without conducting a reasonable investigation based upon all available information.

.　　.　　.　　.　　.

(vi) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.

40 P.S. § 1171.5(a)(10) (Supp.1980).

While the act does not specifically refer to an insurer's "bad faith," the Pennsylvania Supreme Court has utilized that term to describe conduct within the act's reach.

Although the seriousness of "bad faith" conduct by insurance carriers cannot go unrecognized, our Legislature has already made dramatic, sweeping efforts to curb the bad faith conduct.

.　　.　　.　　.　　.

[T]he Unfair Insurance Practices Act serves adequately to deter bad faith conduct. ...

*D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966, 969–70 (1981).[11] *See* 1 Pa.C.S.A. § 1922 ("In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used ... (4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language").[12] *See also McLaughlin*

---

11. The Pennsylvania Supreme and Superior courts have also construed the phrase "bad faith" in the context of third-party insurance claim settlement. *See, e.g., Hall,* 526 A.2d at 415.

12. *See Grayned,* 408 U.S. at 111, 92 S.Ct. at 2300–01 ("Were we left with just the words of the ordinance, we might be troubled by the imprecision of the phrase 'tends to disturb.' However ... the Supreme Court of Illinois [has] construed a Chicago ordinance prohibiting, *inter alia,* a 'diversion tending to disturb the peace,' and held that it permitted conviction only where there was '*imminent* threat of violence.' ... [W]e think it proper to conclude that the Supreme Court of Illinois would interpret the Rockford ordinance to prohibit only actual or imminent interference with the 'peace or good order' of the school") (footnotes and citations omitted).

*v. Nationwide Mutual Insurance Co.,* 33 D & C 3d 504, 511 (1983) ("If plaintiffs have a remedy for defendant's alleged bad faith, it is under Pennsylvania's Unfair Insurance Practices Act ...").

Given its accepted meaning in the law of insurance, as explicated by the courts of Pennsylvania and other jurisdictions, the failure of § 8371 to define "bad faith" does not render the law unconstitutionally vague.[13]

### IV.

◼ Defendant also attacks § 8371's punitive damages provision, arguing that it violates due process of law because there are no standards or limits affecting the amount of such an award. Here again, in the context of established Pennsylvania law, the requirements of due process are fully satisfied and this contention cannot prevail.[14]

In Pennsylvania, "the purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others from similar conduct...." *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989). *See, e.g., Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355, 358 (1963); *Schecter v. Watkins,* 395 Pa.Super. 363, 577 A.2d 585, 595, *appeal denied,* 526 Pa. 638, 584 A.2d 320 (1990) ("The purpose of punitive damages is to punish for outrageous conduct done in reckless disregard of another's rights. The aim of punitive damages is deterrence of similar conduct"). An award of punitive damages in Pennsylvania is explicitly circumscribed by the factors set forth in Section 908(2) of the Restatement (Second) of Torts and related concepts.[15]

This Court has embraced the guideline of section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages: "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Punitive damages must be based on conduct which is " 'malicious,' 'wanton,' 'reckless,' 'willful,' or 'oppressive' ..."

.  .  .  .  .

Further, one must look to "the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties ..."

.  .  .  .  .

The state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.

.  .  .  .  .

In deciding whether to impose punitive damages a court should not look to the

---

**13.** *See Village of Hoffman,* 455 U.S. at 494–95, 102 S.Ct. at 1191 ("[T]he court ... should uphold [a facial vagueness] challenge only if the enactment is impermissibly vague in all of its applications").

**14.** The statute reads "if the court finds that the insurer has acted in bad faith toward the insured, the court may ... [a]ward punitive damages against the insured." 42 Pa.C.S.A. § 8371. Defendant's arguments that "[s]ection 8371 does not provide any guidance to the jury in deciding whether to award punitive damages," def. mem. at 12, and "the jury ... [is] left completely unfettered and, more importantly, unguided in making this potentially devastating decision," def. mem. at 15, need not be considered.

It is also unnecessary to address defendant's vagueness argument here. *See Haslip,* 111 S.Ct. at 1046 n. 12 ("Pacific Mutual also makes what it calls a void-for-vagueness argument and, in support thereof, cites *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). That case, however, is not helpful. The Court there struck down a Pennsylvania statute allowing costs to be awarded against a defendant acquitted of a misdemeanor. The statute did not concern jury discretion in fixing the amount of costs. Decisions about the appropriate consequences of violating a law are significantly different from decisions as to whether a violation has occurred").

**15.** "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." Restatement (Second) of Torts § 908(2). *See also* Restatement (Second) of Torts § 908, comment (b) ("[T]he purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence").

third parties' criminal conduct ...; a court should not look at the end result ...; rather, the court should examine the actor's conduct.

*Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747–48 (1984) (citations omitted). *See also Kirkbride*, 555 A.2d at 803.

The United States Supreme Court has recently determined that punitive damages assessed by a jury in accordance with similar state policies, guidelines and constraints do not violate due process.

One must concede that unlimited jury discretion—or unlimited judicial discretion for that matter—in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities. We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus.

.    .    .    .    .

[T]he trial court expressly described for the jury the purpose of punitive damages, namely, "not to compensate the plaintiff for any injury" but "to punish the defendant" and "for the added purpose of protecting the public by [deterring] the defendant and others from doing such wrong in the future." Any evidence of Pacific Mutual's wealth was excluded from the trial in accordance with Alabama law.

.    .    .    .    .

To be sure, the instructions gave the jury significant discretion in its determination of punitive damages. But that discretion was not unlimited. It was con-fined to deterrence and retribution, the state policies sought to be advanced.

.    .    .    .    .

These instructions, we believe, reasonably accommodated Pacific Mutual's interest in rational decisionmaking and Alabama's interest in meaningful individualized assessment of appropriate deterrence and retribution. The discretion allowed under Alabama law in determining punitive damages is no greater than that pursued in many familiar areas of the law as, for example, deciding "the best interests of the child," or "reasonable care," or "due diligence," or appropriate compensation for pain and suffering or mental anguish. As long as the discretion is exercised within reasonable constraints, due process is satisfied.

*Haslip*, 111 S.Ct. at 1043–44 (citations and footnotes omitted).

Plainly, § 8371 confers on the trial court significant discretion in its determination of punitive damages. As in *Haslip*, however, that discretion is not unlimited. As long as it is exercised within the reasonable constraints required by Pennsylvania law, due process is satisfied.[16]

Moreover, Pennsylvania appellate courts "provide an additional check on the ... trial court's discretion." *Haslip*, 111 S.Ct. at 1045. *See, e.g., SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 705 (1991) (determination whether party's actions amount to outrageous conduct for purposes of punitive damages award will be set aside for abuse of discretion); *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1263 (1983) (citing *International Electronics Co. v. N.S.T. Metal Products Co.*, 370 Pa. 213, 88 A.2d 40 (1952)) (punitive damages will "be reduced on appeal if the reviewing court determines that they are excessive

---

**16.** Here, as in *Haslip*, 111 S.Ct. at 1045, "the fact finder must be guided by more than a defendant's net worth. [Pennsylvania] plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket." This is so even though a court may consider the wealth of the defendant and punitive damages do not have to bear a reasonable rela-tionship to the injury sustained or to the amount of compensatory damages awarded in the case. *Kirkbride*, 555 A.2d at 803. The court's discretion is still "not unlimited. It [is] confined to deterrence and retribution, the state policies sought to be advanced." *Haslip*, 111 S.Ct. at 1044.

under the facts of the individual case").[17] "The application of these standards, we conclude, imposes a sufficiently definite and meaningful constraint on the discretion of [Pennsylvania] fact finders in awarding punitive damages." *Haslip*, 111 S.Ct. at 1045.

17. *See also Moran v. G & W.H. Corson, Inc.,* 402 Pa.Super. 101, 586 A.2d 416, 422–23 (1991) (affirming trial court order striking punitive damage award on grounds that evidence was insufficient to establish requisite reckless conduct); *Harvey v. Hassinger,* 315 Pa.Super. 97, 461 A.2d 814, 817 (1983) ("It is not proper to award punitive damages in a survival action where the claim for such damages is based on the gross negligence of the defendant. The court erred in charging on punitive damages and the jury's verdict as to punitive damages must be set aside"); *Starr v. Allegheny General Hospital,* 305 Pa.Super. 215, 451 A.2d 499, 506 (1982) ("[O]ur review of the record ... does not show any evidence to demonstrate that Dr. Kessler's actions were 'outrageous,' badly motivated or recklessly indifferent. We conclude, therefore, that the lower court did not err in refusing to instruct the jury on punitive damages").