Eugene SEEGER, a minor, by Jacqueline C. SEEGER, his Parent and Natural Guardian, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. A. No. 1:CV–90–1678.

United States District Court, M.D. Pennsylvania.

Sept. 4, 1991.

987

## MEMORANDUM

CALDWELL, District Judge.

The defendant, Allstate Insurance Company (Allstate), has moved us to reconsider our order, dated June 3, 1991. That order held in abeyance Allstate's motion to dismiss the plaintiff's cause of action under 42 Pa.C.S. § 8371 for Allstate's alleged bad faith in the handling of his claim for first party benefits under an Allstate automobile insurance policy.[1] Plaintiff, Eugene C. Seeger, who brought this action by his parent and natural guardian, Jacqueline C. Seeger, suffered serious injuries on January 31, 1990, when he was struck by an automobile while he was allegedly standing by the side of the road holding a dirt bike. Allstate has resisted the claim on the basis of an exclusion in its policy for injuries suffered while occupying a motorcycle or similar vehicle.

We have decided to grant the motion for reconsideration and we will therefore consider the motion to dismiss.

We have already disposed of Allstates's argument that the bad faith claim is insufficient because the complaint fails to allege that Allstate's conduct occurred after the effective date of section 8371, July 1, 1990.[2] While we agreed with the defendant in our memorandum, dated December 14, 1990, that the section could only be applied prospectively, we also concluded that the complaint does make sufficient allegations of defendant's conduct after the effective date of the section that any questions concerning the facts of the cause of action would have to be resolved by discovery. This discussion will therefore deal with Allstate's remaining legal arguments against the bad faith claim.

▇ Allstate argues that section 8371 cannot apply to contracts entered into prior to its effective date. Defendant asserts that this would alter substantive rights and

Richard C. Angino, Richard A. Sadlock, Angino & Rovner, Harrisburg, Pa., for plaintiff.

Harvey Freedenberg, Donald Brower Kaufman, McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

---

**1.** Section 8371, a part of Act No. 1990–6 (Act 6), provides, in pertinent part, as follows:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:

(1) ....

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

**2.** Section 32(8) of Act No. 6 provided that section 8371 "shall take effect" on July 1, 1990.

obligations under the contract and expose Allstate to "additional legal and monetary risks without any corresponding increase in premiums." (Allstate's brief in support of its motion to dismiss at p. 13). Allstate also asserts that such an application would violate clauses of the federal and state constitutions prohibiting laws impairing the obligations of contracts. *See* U.S. Const. art. I, § 10, cl. 1; Pa. Const. art. I. § 17. Among other cases, defendant cites in its support *Bryant v. Liberty Mutual Insurance Co.*, 1990 WL 223126 (E.D.Pa.) and *Rudolph Rosa, Inc. v. Latrobe Brewing Co.*, 347 Pa.Super. 551, 500 A.2d 1194 (1985). *See also McAlister v. Sentry Insurance Co.*, 1991 WL 102973 (E.D.Pa.).

*Rudolph Rosa* is distinguishable. In that case, newly enacted legislation would have destroyed a franchisor's prior contractual right to immediate termination of a franchise on written notice. Section 8371 has no such effect upon Allstate's contractual rights and obligations here. *Bryant,* however, is directly on point. In *Bryant,* the court held that section 8371 did not apply to insurance contracts entered into before the effective date of the section because it would have varied contractual obligations agreed upon prior to the section's existence. However, we decline to follow *Bryant.*

We are persuaded instead by the court's analysis in *Coyne v. Allstate Insurance Co.*, 771 F.Supp. 673, (E.D.Pa.). Addressing the same arguments when Allstate made them in *Coyne,* the court reasoned as follows:

> Although the existence of an insurance contract is a prerequisite to the enforcement of § 8371 and the insurer's conduct must be evaluated in light of the contract's provisions, plaintiff's bad faith claim is not based on the policy of insurance. The law proscribes "acting in bad faith toward the insured." 42 Pa.C.S.A. § 8371. It is defendant's alleged conduct—all of which occurred after the act's effective date—that forms the actionable gravamen of count two. The application of that law does not alter the insurance policy's substantive requirements, interfere with the insurer's con-

tractual rights, or otherwise impair the parties' obligations. While an insurer has the right to rely upon the substantive provisions of its contractual policy, it has never had the right to act in bad faith toward the insured. It cannot rely on contractual language agreed to before the effective date of the statute in order to insulate itself from statutory liability for bad faith conduct alleged to have occurred after that date. Retrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted. *Costa v. Lair,* 241 Pa.Super. 517, 363 A.2d 1313, 1314 (1976) (quoting *Smith v. Fenner,* 399 Pa. 633, 641, 161 A.2d 150, 154—(1960)). [remaining citations omitted].

> So viewed, § 8371 may be applied to post-July 1, 1990 conduct even though the policy was issued before that date....

*Id.* at 675, 1991 WL 153422, at *1–2 (footnotes omitted) (brackets added).

In support of its statement that an insurance company never had the right to act in bad faith toward its insured, the court footnoted *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981), in which the Pennsylvania Supreme Court, while rejecting a private cause of action for bad faith, noted that the Insurance Commissioner had been authorized by the legislature to curb a number of bad faith practices.

We likewise conclude, either as a matter of contract law or constitutional law, that if the plaintiff can prove that certain bad faith conduct occurred after the effective date of section 8371, his claim under that section is not barred just because it involves an insurance policy entered into prior to that date.

■ We think the same analysis applies to the defendant's *ex post facto* argument. Concentrating, as we should, on bad faith

conduct occurring after the effective date of the section, section 8371 has no retroactive effect. Defendant had fair warning that conduct occurring after July 1, 1990, would be subject to the section. And, as long as prospective conduct alone is sanctioned, there is no *ex post facto* violation, because there is no chance that the legal consequences of an act committed before the effective date of the section will be changed or that the section will impose a more onerous punishment than existing law. *See Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). At the time of the relevant conduct, it was the existing law.

Allstate also argues that section 8371 violates due process because it exposes an insurance company to liability for "bad faith" in the handling of a claim, a vague term which does not give the defendant fair warning of conduct which might be proscribed by the section. Moreover, there is no statutory definition which would cure this defect. Further, section 8371 fails to set forth standards to determine the amount of punitive damages after a finding of bad faith has been made.

█ *Coyne* discussed these issues at length and rejected Allstate's arguments. We are persuaded by the analysis of the court in *Coyne* and we adopt it here. The term "bad faith" has been sufficiently defined by case law from other jurisdictions or by statutory examples from the Pennsylvania Unfair Insurance Practices Act, 40 P.S. §§ 1171.4 and 1171.5 (Purdon Pamphlet 1991–92), that it is not so vague as to make section 8371 unconstitutional on due process grounds. Further, the Pennsylvania Supreme Court has indicated that the appellate courts may exercise sufficient oversight over the amount of punitive damage awards to prevent those awards from exceeding constitutional boundaries.

Finally, the defendant has argued that section 8371 does not apply here because it is a provision generally applicable to all insurance policies and it conflicts with provisions in the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701 *et seq.*, sections 1716 and 1797, that specifically cover the refusal of an automobile insurance company to pay a claim.

Under the Statutory Construction Act of 1972, 1 Pa.C.S. § 1501 *et seq.*, general provisions must yield to specific ones if the two are in "irreconcilable" conflict. Section 1933 provides, in pertinent part, as follows:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision....

Allstate asserts that section 8371 conflicts with the following specific provisions. First, there is section 1716 which deals with first party benefits as follows:

> Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

Second, there is section 1797(b), which establishes a procedure by which an insurance company must contract with a peer review organization (PRO) for advice if it has questions about the medical necessity of health care treatment by a health care provider. *See* section 1797(b)(1). Section 1797(b) provides the following relief for a company's refusal to pay, depending upon whether the company challenged the services or fees before a PRO:

> (4) Appeal to court.—A provider of medical treatment or rehabilitative ser-

vices or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

(5) PRO determination in favor of provider or insured.—If a PRO determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12% per year on any amount withheld by the insurer pending PRO review.

(6) Court determination in favor of provider or insured.—If, pursuant to paragraph (4), a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees.

In the defendant's view, these are the only procedures which can govern when an automobile insurer handles a claim in an unreasonable manner. The bad faith claim under section 8371 must therefore be stricken. In its support, defendant cites *Williams v. State Farm Mutual Automobile Insurance Co.*, 763 F.Supp. 121 (E.D.Pa.1991) in which the court observed that section 8371 "appears, on its face, to be inconsistent and in conflict with the detailed procedures and remedies the legislature has mandated for claims by an insured in the [MVFRL]," *id.* at 126 (brackets added), and that "[a]ccordingly, it would appear that § 8371 created by Act 6 does not apply to claims by an insured under the [MVFRL]." *Id.* at 127 (brackets added).

As the plaintiff has noted, however, this seems to be only a tentative conclusion on the court's part. The court's decision to reject the section 8371 claim really turned on the failure of the plaintiff to show that any bad faith conduct had occurred prior to the effective date of section 8371.

We further note that the court's ruling came on the defendant's motion for judgment on the pleadings only as to counts II and III of a three count complaint. Significantly, the defendant had not challenged the legal sufficiency of count I, which was a claim under the MVFRL for breach of the insurance contract to pay the reasonable and necessary medical expenses for injuries suffered in three automobile accidents. This count was remanded to the state court after the district court held that count II, a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 et seq. (Purdon Supp.1990), and count III, the section 8371 claim for "willful, wanton and malicious conduct in violation of recent amendments to the [MVFRL]," 763 F.Supp. at 123, had to be dismissed, leaving the court without a sufficient jurisdictional amount.

The court's memorandum does not reveal why the defendant was otherwise resisting the claim in count I. It could very well have been because State Farm was questioning the medical necessity or reasonableness of the plaintiff's treatment, matters within the scope of the detailed procedures set forth in section 1797(b). Section 1797(b)(1) provides, in pertinent part, that: "Insurers shall contract jointly or separately with any [PRO] ... for the purpose of confirming that ... treatment ... conform[s] to the professional standards of performance and [is] medically necessary." (brackets added).

■ In the instant case, on the other hand, Allstate is not questioning the medical necessity of the plaintiff's treatment but whether the plaintiff's medical expenses are covered at all under its policy because of a contract exclusion dealing with motorcycles or motor bikes, a legal issue which is obviously not amenable to resolution by the procedures set forth in section 1797(b). *See* 31 Pa.Code § 68.2(b) ("Under [Act 6], PROs may not be utilized for the purpose of mediating disputes as to appropriate charges or costs, but rather may only be utilized to evaluate the reason-

ableness and necessity of medical treatment.") (brackets added). Hence, there is no possibility of conflict between that section and section 8371 in the circumstances of the instant case.

█ Further, we see no conflict between section 1716 and section 8371. Section 1716 provides that overdue benefits—benefits not paid within thirty days after the company receives reasonable proof of amount—shall bear interest at twelve per cent, and that a company shall be liable for attorney's fees if benefits have been withheld because a company "acted in an unreasonable manner." The section does not provide that this shall be the company's only liability. It therefore is not in conflict with that part of section 8371 permitting the recovery of punitive damages for bad faith conduct. It is true that sections 1716 and 8371 both allow the award of attorney's fees and interest and that they might come into conflict in the calculation of those amounts. In that case, we are initially inclined to follow section 1716, but we do not view that as a reason for dismissing the section 8371 claim in its entirety.

We find support for this conclusion in *Carson v. ITT Hartford Insurance Group*, 1991 WL 147469 (E.D.Pa.). *Carson* is similar to *Williams* because the court in *Carson* also held that a bad faith claim for first party benefits under an auto policy could not be brought under section 8371 because it would be inconsistent with the procedures set forth in the MVFRL. But the court then immediately stated:

> This is not to say that an insured covered by the MVFRL could never have a claim for punitive damages under § 8371. For example, where a person's policy is revoked without cause or for an improper cause, the procedures and remedies in § 1797 do not apply and a "claim" under § 8371 might lie.

*Id.* at *3.

We reach a similar conclusion when the company has denied there is any coverage at all. The procedures and remedies of section 1797 do not apply in these circumstances and a claim under section 8371 will lie.[3]

We will issue an appropriate order.

---

3. We note that both *Williams* and *Carson* also discuss section 1798. We have examined this provision and conclude that it does not conflict with section 8371 either.