**Norman O. GRANBERG, Plaintiff,**

v.

**ASHLAND COUNTY, Iron County, Price County, Unified Services Board, and Price County Council on Alcoholism and Other Drug Abuse, Inc., Defendants.**

**No. 84–C–71–S.**

United States District Court, W.D. Wisconsin.

July 25, 1984.

---

Arthur DeBardeleben, Park Falls, Wis., for plaintiff.

Matthew F. Anich, Ashland, Wis., James D. McKenzie, Hurley, Wis., Mary M. Liedtke, Phillips, Wis., John M. Scheels, Wausau, Wis., James E. Garvey, Eau Claire, Wis., Keith Dallenbach, Ashland, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

All the defendants to this § 1983 action have moved for dismissal for failure to state a claim on various grounds. Their motions are denied.

Plaintiff Norman O. Granberg alleges in his complaint that the defendants, the Wisconsin Counties of Ashland, Iron and Price, the Unified Services Board for the Counties, and the not-for-profit corporation Price County Council on Alcoholism and Other Drug Abuse, Inc. (Price County Council) have acted in concert under color of state law to deprive him of liberties guaranteed by the First Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983. Specifically, Granberg alleges that he was convicted of driving while intoxicated in violation of Wis.Stat. § 346.63(1) (1982–83) on September 13, 1982 in the Price County Circuit Court. Pursuant to Wis.Stat. § 343.30(1q), the suspension and revocation provisions of the Wisconsin drunk-driving traffic laws, the court ordered Granberg to undergo an alcohol assessment and fulfill a driver safety plan under a program administered by the defendant Price County Council as part of a contract between it and the defendant Unified Service Board. The driver safety plan initially consisted of outpatient counseling, but subsequently required Granberg to submit to inpatient alcohol rehabilitation treatment at Sacred Heart Hospital (Sacred Heart) in Tomahawk, Wisconsin. Granberg states that Sacred Heart's rehabilitation program contained mandatory re-

ligious elements and that, after completing 20 days of his prescribed 30-day course of treatment, he left Sacred Heart on account of those religious elements. At that point, one of the defendants acting in concert with the others allegedly notified the Wisconsin Department of Transportation of Granberg's non-compliance with his driver safety plan, and his license was suspended pursuant to Wis.Stat. § 346.30(1q)(d).

Granberg also contends that under the State statutory scheme, the defendant Counties have responsibility for alcohol rehabilitation, that the United Services Board makes the Counties' policies on matters of alcohol rehabilitation, and that, pursuant to the Board's power, the Board had contracted with Price County Council to fulfill the Counties' responsibilities.

All the defendants are alleged to have acted willfully and in concert, under color of state law, in their actions or inaction towards Granberg.

### OPINION

■ It should be noted at the outset that Granberg's complaint leaves much to be desired. Many of his factual allegations are conclusory. The legal basis for each defendant's liability is unclear. Likewise, the relationship between the defendants as a matter of State law is merely implicit. In spite of those defects, however, the Court believes that the complaint, construed liberally, sufficiently states a claim for relief to allow the action to go forward, and that a dismissal at this time would accomplish nothing but delay in the ultimate resolution of this matter—plaintiff would have to be given leave to amend, and the amended complaint that would inevitably follow could easily state a claim.

The reasons for dismissal asserted by the defendants that the complaint fails to state a claim are dealt with one at a time below.

*Lack of State Action*

In order for there to be a cause of action under § 1983, the acts alleged must have occurred "under color of state law." 42 U.S.C. § 1983. All the defendants argue

that state action is missing from Granberg's allegations, as he complains of the religious content of an alcohol rehabilitation program admittedly run by a private organization, Sacred Heart. The defendants read Granberg's complaint too narrowly.

Assuming Granberg's allegations are true, he underwent assessment and treatment pursuant to a court order authorized and indeed required by Wis.Stat. § 343.-30(1q). A perusal of that statute reveals that the treatment received by Granberg was an integral part of a comprehensive statutory scheme to identify licensed drivers who abuse alcohol or other drugs, and to condition continued driving privileges for persons found to have alcohol or drug problems upon successful participation in a treatment program. While the statute places responsibility for assessment and treatment upon local boards created by counties pursuant to Wis.Stat. § 51.42 ("51.42 boards"), the terms of § 51.42(5) clearly contemplate that the actual process of assessment and treatment may be carried out by private parties under contract with a § 51.42 board.

■ Whenever a state, formally or informally, delegates to private persons functions that have traditionally been the exclusive prerogative of the state, those persons become state actors for the limited purpose of performing those functions. *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). *See also Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). To the Court's mind, licensing persons for the privilege of driving motor vehicles on public highways, determining whether a person is qualified for a license, and imposing conditions, static or continuing, for retention of a license already granted, are quintessential state functions. To the extent those functions are shared with private parties, those parties become state actors while performing them.

■ Here, a private party, Price County Council is alleged to have participated in the court-ordered statutorily-mandated assessment and allegedly unconstitutional

treatment of Granberg, in which he could not refuse to participate without losing his driving privilege. The Council's alleged participation is sufficient for the Court to find it was a state actor in its contacts with Granberg in connection with the court-ordered assessment and treatment.

Contrary to defendants' assertion, *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), is not applicable to these facts. In that case, the United States Supreme Court held that state support and regulation of a private school, the enrollment of which consisted largely of maladjusted students referred and supported by public school systems, did not render the school's personnel decisions state action. The focus of the Court's decision was the lack of state regulation of or interest in the school's personnel matters. The Court reasoned that,

> The school ... is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, strips or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.

*Id.* at 841, 102 S.Ct. at 2771.

This case would be similar to *Rendell-Baker* if the acts alleged to be unconstitutional were not related to the public functions performed by Price County Council. If Granberg were merely a council employee challenging his termination, or a voluntary recipient of rehabilitation services paid for by county government, for instance, his argument in favor of finding state action would be no more meritorious than the argument rejected in *Rendell-Baker*. The key distinction between that case and this one is that Granberg is challenging the manner in which Price County Council fulfilled its public function of assessing, treating, and monitoring drivers who were under threat of losing their driver's licenses.

Under the circumstances, the Court finds that Granberg has sufficiently alleged state action to survive motions to dismiss for lack of state action.

### Insufficient Causation

■ All the defendants maintain that they were insufficiently involved in Sacred Heart's treatment of Granberg to be found liable for any deprivation of his rights that may have occurred.

Considering the nature of Granberg's claim, the facts alleged suggest two possible constitutional violations. The first is a straight First Amendment Free Exercise claim: By compelling him to take part in an alcohol rehabilitation program containing mandatory religion under threat of driver's license suspension, defendants interfered with his right not to believe in a particular religion or in any religion in general. *See generally Abington School District v. Schempp*, 374 U.S. 203, 222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844 (1962).

The fact that Granberg's treatment program was court-ordered makes this case quite similar to *Owens v. Kelley*, 681 F.2d 1362 (11th Cir.1982). There, a probationer's claim that he was ordered, as a condition of probation, to undergo "emotional maturity instruction" containing religious elements was held to state a claim for a violation of the Free Exercise Clause. In a broader sense, Granberg's claim is also similar to that of the plaintiff in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). In that case, the Supreme Court held that the disqualification of persons unable to work on Saturdays for religious reasons from receiving unemployment compensation benefits violated the Free Exercise Clause because it forced a person to choose between religious beliefs and a valuable government benefit. *Id.* at 404, 83 S.Ct. at 1794.

Granberg's second claim arising from these facts is most easily viewed as an Equal Protection violation: The decision to report Granberg's noncompliance with the treatment program to the Department of Transportation, resulting in a suspension of his license, in effect punished him for exercising his rights under the Free Exercise Clause, if it was done with knowledge that

he had left Sacred Heart because of the religious aspects of the treatment program. *Cf. McDaniel v. Paty,* 435 U.S. 618, 644, 98 S.Ct. 1322, 1337, 55 L.Ed.2d 593 (1977) (White, J. concurring) (State law prohibiting clergy from holding elective office seen as discriminating against persons upon the basis of their exercise of their First Amendment right to believe in and exercise their religion, thereby violating the Equal Protection Clause).

Ashland, Iron and Price Counties point out that Granberg fails to allege that there were county policies or ordinances specifying that treatment programs run under the supervision of their § 51.42 board, the United Services Board, contained religious elements. In fact, they argue, Granberg has alleged no action on their part, and that fact should lead to dismissal of his action against them. Similarly, the United Services Board contends that the most damning inference about its conduct that can be drawn from Granberg's complaint is that it may have been negligent in permitting Sacred Heart's treatment program to contain mandatory religious elements.

Under *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a governmental entity may be held liable under § 1983 for the acts of its employees or agents that deprive persons of their constitutional rights whenever it can be said that, "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." *Id.* at 695, 98 S.Ct. at 2038. Official policy can be made at any level of government to which policy-making power has been delegated. For example, one recent Ninth Circuit case involved a city manager's firing of a city police officer allegedly motivated by the officer's union activities. There, the court of appeals held that the municipal government's structure, which vested ultimate responsibility for hiring and firing in the city manager, rendered the manager's decision to fire the plaintiff officer an act representing official policy. *McKinley v. City of Eloy,* 705 F.2d 1110 (9th Cir.1983). *See also Reed v. City of Shorewood,* 704 F.2d 943, 952 (7th Cir. 1983).

The content of the treatment program imposed upon Granberg and others pursuant to a court-ordered driver safety plan was certainly a policy matter, as was the decision to report Granberg's noncompliance with the plan if the party reporting it knew the alleged reason for his noncompliance.

The only remaining question is which of the defendants can be held liable for such policies. The short answer is whichever of the defendants created the policies or delegated policy-making power to another of the defendants.

Price County Council is alleged to have participated directly in the decisions that affected Granberg, and the United Services Board is alleged to have authorized the Council's participation by contract. These allegations are sufficient to keep both the Council and the Board party to this action. With regard to the Counties, the statutes cited by Granberg establish that the defendant Unified Services Board is merely an arm of the Counties.

By the terms of Wis.Stat. § 51.42, individual counties are ultimately responsible for the treatment of alcoholic citizens residing within their respective counties. The statute also provides that a county fulfill that responsibility by creating, alone or in combinations with other counties, a community board consisting of a policy-making board of directors appointed by the county or counties to administer a comprehensive program for county residents suffering from a full range of mental disabilities. § 51.42(3). An individual county or counties combining to create such a board have the power to appoint and remove their members, *see* subsections 4(c) and 4(d), and approve its budget, *see* subsection 8(i). Regardless of the responsibilities given the board by the State, the creating counties are ultimately responsible for its expenditures. 65 Op.Wis.Att'y Gen. 49 (1973). A board itself has the power, through its

full-time director, to enter into contracts with provider agencies, *see* subsections 5(h)(7) and 5(h)(8), collect debts incurred in connection with treatment paid for by the board, *see* Wis.Stat. § 46.10, and apply for State and Federal grants-in-aid, *see* subsection 3(a). Section 51.42 does not establish that a board is a separate legal entity or body corporate, nor does the statute speak of the board's capacity to be sued.

Under this statutory scheme, the Court concludes that the acts of the defendant United Services Board, a § 51.42 board, are the acts of the counties that created it. That conclusion is consistent with the only authority discovered by the Court that deals with the relationship between counties and their § 51.42 boards. *See* Op.Wis. Att'y Gen. of May 20, 1982 (No. 38–82, unpublished) (board is an agency of counties that create it). Thus, if the policies of the defendant Unified Services Board caused a deprivation, defendants Ashland, Iron and Price Counties are liable.

*Other Grounds*

■ Numerous other grounds for finding that the complaint fails to state a claim have been asserted by all the defendants, but only a few are worth mentioning. First, Price County Council echos the plaintive cry of the Counties and the Unified Services Board that it could only be found liable through imposition of vicarious liability for the acts of Sacred Heart, and that there is no legal relationship between it and Sacred Heart that could justify that outcome. As explained above, if Price County Council is found liable, it will be for the acts of its own employees with regard to Granberg's treatment and the suspension of his license, not simply for the acts of Sacred Heart. Price County Council also argues that Granberg's participation in the treatment program was voluntary by the terms of his complaint, which alleges that the Council "sent" Granberg to Sacred Heart and "arranged for" his treatment there. That argument is meritless under *Sherbert v. Verner, supra.* Like the plaintiff in *Sherbert,* Granberg was allegedly forced to choose between sitting still for religious indoctrination he did not desire, and losing his driver's license, like unemployment compensation a valuable government benefit. The Free Exercise Clause is offended whenever government conditions receipt of benefits upon adherence to, or rejection of, religion. Of course, the factual questions of whether Granberg had other treatment options and whether the religious content of the Sacred Heart program, if any, was mandatory remain open.

■ The Counties and the Unified Services Board are correct in their contention that they cannot be liable for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). That claim will be dismissed.

■ However, the Board's Eleventh Amendment, lack of notice, and waiver arguments are without merit. With regard to Eleventh Amendment immunity, the State Department of Social Services' involvement in the operation of a § 51.42 board is much too limited to result in a finding that such a board is a creation of the State. *See generally* § 51.42(8), (10) and (12). And although the waiver argument accepted by the court in *Fern v. Thorp Public School,* 532 F.2d 1120 (7th Cir.1976), might at first appear to be applicable here, that case involved only a substantive due process challenge to the fairness of a termination, not a First Amendment/Equal Protection claim. The rationale of that decision was that the plaintiff could hardly complain that the defendants terminated him on an unfair basis if he had had every opportunity to argue his position prior to his termination but had failed to take it. The issues are different here.

*Costs for Discovery Motion*

■ During the pendency of the motions to dismiss, some of defendants have submitted itemized statements of the costs and attorney's fees they incurred in connection with the defendant United Services Board's motion to compel Granberg to authorize the release of his medical records in the

possession of Sacred Heart Hospital and defendant Price County Council. The Court has reviewed Granberg's statement in opposition to the imposition of costs and is frankly confused by the reasoning behind his refusal to authorize access to the records. The Court believes that Granberg's authorization would be required to obtain the records whether his treatment was voluntary or compelled. The Court is at a loss, then, to understand Granberg's assertion that unfavorable inferences could be drawn from the completion of such an authorization.

Thus, it will stand by its initial conclusion that Granberg's refusal to provide the requested authorization was frivolous, and assess the motion costs of the moving party against him. The participation of defendants Ashland and Price Counties was unnecessary, however, and Granberg will not be assessed their costs.

Accordingly,

## ORDER

IT IS ORDERED that the motions to dismiss filed by the defendants are GRANTED with respect to plaintiff's punitive damage claims against Ashland, Iron and Price Counties and the Unified Services Board, and DENIED in all other respects.

IT IS FURTHER ORDERED that motion costs in the amount of $238.00 are awarded against plaintiff Norman O. Granberg in the favor of the defendant Unified Services Board.