Malcolm W. GROVE, Plaintiff,

v.

AETNA CASUALTY & SURETY COMPANY, Defendant.

Civ. A. No. 91–184J.

United States District Court,
W.D. Pennsylvania.

Feb. 2, 1993.

Richard M. Serbin, Levine, Reese & Serbin, Altoona, PA, for plaintiff.

Joseph A. Ross, Warren L. Simpson, Jr., Rawle & Henderson, Philadelphia, PA, for defendant.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

### I. BACKGROUND

Plaintiff Malcolm W. Grove ("Grove") filed this action in the Court of Common Pleas of Blair County, Pennsylvania on August 7, 1991. Defendant Aetna Casualty & Surety Company ("Aetna") removed the action to this Court on September 6, 1991. The facts are as stated in my April 2, 1992 Memorandum Order. This matter is currently before the Court on defendant's Motion For Partial Summary Judgment, and Motion To Compel Signed Authorization Pertaining to Malcolm Grove Disability Claim File. Jurisdiction is based upon diversity of citizenship.[1]

### II. DISCUSSION

A. *Defendant's Motion For Partial Summary Judgment*

Count II of plaintiff's Complaint seeks punitive damages, plus interest, attorney's fees and all court costs from defendant pursuant to 42 Pa.C.S.A. § 8371 for allegedly refusing to pay overdue medical bills. Enacted as part of the Act of February 7, 1990, P.L. 11, No. 1190–6, 42 Pa.C.S.A. § 8371 provides, in relevant part:

*Section 8371. Actions on insurance policies*

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

Defendant argues that plaintiff is not entitled to recover punitive damages because section 8371 does not apply to a dispute over the non-payment of first-party medical benefits under an auto insurance policy. Specifically, defendant contends that the provisions of section 8371 are inconsistent with, and pre-empted by, those of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.*, which specifically address an insurer's refusal to pay claims. 75 Pa.C.S.A. § 1797.

■ It is true that the peer review and appeal provisions of 75 Pa.C.S.A. § 1797 preempt section 8371 punitive damages claims in some circumstances. *See Danley v. State Farm Mutual Automobile Ins. Co.,* 808 F.Supp. 399 (M.D.Pa.1992); *Riddell v. State Farm Fire & Casualty Co.,* 1992 WL 209971 (M.D.Pa.1992); *Williams v. State Farm Mutual Auto Ins. Co.,* 763 F.Supp. 121, 125–27 (E.D.Pa.1991).

However, 75 Pa.C.S.A. § 1797 does not in every case preempt 42 Pa.C.S.A. § 8371. For example, where plaintiff's action is for payment of uninsured motorist benefits, there is no conflict between section 1797 and section 8371, for section 1797 applies only where first-party benefits are at issue. Uninsured motorist benefits are not first-party benefits, so section 8371 is not preempted by section 1797. *See Gavaghan v. Replacement Rent–A–Car, Inc.,* 811 F.Supp. 1077 (E.D.Pa.1992).

Section 8371 was also held to apply to an action for auto insurance policy benefits in *Seeger By Seeger v. Allstate Ins. Co.,* 776 F.Supp. 986 (M.D.Pa.1991). In *Seeger,* the court noted that the defendant insurer questioned not the medical necessity of the plaintiff's treatment, but whether the plaintiff's medical expenses were covered at all under its policy because of a contract exclusion dealing with motorcycles. That was a legal issue not amenable to the peer review organization ("PRO") procedures provided for in

---

1. Plaintiff is a Pennsylvania citizen with principal residence in Pennsylvania. Defendant is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

section 1797. *Id.* at 990 (citing 31 Pa.Code § 68.2(b) ("Under [Act 6], PROs may not be utilized for the purpose of mediating as to appropriate charges or costs, but rather may only be utilized to evaluate the reasonableness and necessity of medical treatment.")).

The same reasoning applied in *Daumer v. Allstate Ins. Co.*, 1992 WL 57673 (E.D.Pa. 1992), a case on all fours with this action. In *Daumer*, the court held that the language of section 1797 expressly limits the peer review and appeal procedure to the specific purpose of "confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." Medical necessity is "conceptually distinct from the question whether that injury is causally related to a particular motor vehicle accident, and, hence, is an injury covered by liability benefits." "Nowhere in section 1797 . . . is the determination of causation . . . vested in a peer review organization."

■ The facts in the case *sub judice* are, for the purpose of this summary judgment motion, precisely the same as those considered by the *Daumer* court. Defendant disputes whether Grove's injuries stem from the 1980 auto accident. Following the reasoning of *Seeger* and *Daumer*, section 1797 does not preempt a section 8371 claim, since it is undisputed that Grove's treatment was medically necessary. The dispute is over causation: were the injuries for which Grove has submitted treatment bills caused by the 1980 accident, or by something else? Because the procedures of section 1797 apply only to PRO reviews for the purpose of determining "medical necessity," plaintiff's section 8371 claim may not be dismissed because of section 1797 preemption.

■ Defendant's argument that 42 Pa. C.S.A. § 8371 cannot be applied retroactively to claims arising out of insurance policies issued before July 1, 1990, the effective date of the statute's enactment, is foreclosed by the contrary holding of the Court of Appeals for the Third Circuit in *Colantuno v. Aetna Ins. Co.*, 980 F.2d 908 (3d Cir.1992). In *Colantuno*, the court expressly held that "[s]ection 8371 may be applied to any insurance contract regardless of date. The rele-

vant inquiry . . . is not the contract date, but rather when [the insurer] is alleged to have committed the bad faith conduct, . . . or . . . refused to provide benefits. . . . "

The majority of courts to have considered the issue have held that "bad faith conduct" in the context of section 8371 refers to a bad faith denial of coverage. *Id.* See also, *Gavahan v. Replacement Rent–A–Car, Inc.*, 811 F.Supp. 1077 (E.D.Pa.1992); *Barbaro v. Old Line Life Ins. Co. of America*, 785 F.Supp. 70, 72 (E.D.Pa.1992); *Wazlawick v. Allstate Ins. Co.*, 1990 WL 294273 (E.D.Pa.1990) ("[D]enial of coverage is the action which determines whether 42 Pa.C.S.A. § 8371 [applies].").

■ Plaintiff alleges that, beginning August 8, 1990, defendant has repeatedly notified Grove that his claims for medical treatment were being reviewed, rather than paid under the insurance policy. Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion For Partial Summary Judgment 11. However, an insurer's *refusal* to pay benefits for a period of time, though frustrating to the insured claimant, is not *necessarily* equivalent to an outright *rejection* of the insured's claim.

■ With respect to denials of benefits, the Pennsylvania No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.* expressly provided:

> An obligor who rejects a claim for basic loss benefits shall give to the claimant written notice of the rejection promptly, but in no event more than thirty days after the receipt of reasonable proof of the loss. Such notice shall specify the reason for such rejection and inform the claimant of the terms and conditions of his right to obtain an attorney. If a claim is rejected for a reason other than that the person is not entitled to basic loss benefits claimed, the written notice shall inform the claimant that he may file his claim with the assigned claims bureau. . . .

40 P.S. § 1009.106(a)(5). Thus, there was a clear legislative preference that benefits be paid or rejected within "thirty days after the receipt of reasonable proof of the loss." Re-

peated requests for more information, which necessarily delay a final determination of whether to pay or reject a claim for benefits, may or may not constitute "bad faith" denials of benefits. Because the record is not sufficiently developed, I will not now attempt to determine exactly when an unpaid claim is transformed into a denied or rejected claim. Defendant's Motion For Partial Summary Judgment with respect to Count Two of plaintiff's Complaint is denied, and, pursuant to 42 Pa.C.S.A. § 8371, the court shall consider Grove's punitive damages claim in the event of a jury verdict for plaintiff on the underlying claim.

B. *Defendant's Motion To Compel Signed Authorization*

■ Defendant Aetna further moves this Court to compel plaintiff to provide defendant with a signed authorization enabling defendant to obtain a copy of plaintiff's alleged Social Security Administration disability file. Upon being alerted of defendant's interest in the disability file, counsel for plaintiff obtained the file himself and has not to date provided defendant with any portions of the file.

Citing my 1986 Court of Common Pleas opinion in *Williams v. Patterson,* No. 1448 C.P., Blair County 1985, plaintiff argues in opposition to defendant's motion to compel that an order compelling a signed authorization "would be improper under the discovery rules." Plaintiff's Answer To Defendant's Motion To Compel Signed Authorization For The Social Security Administration Pertaining To Malcolm Grove's Disability Claim File 3. Plaintiff's reliance on *Williams v. Patterson* is misplaced, for the portion of that opinion addressing a motion to compel signed authorization merely stated the general rule that a court's function for discovery purposes is primarily negative. That is, a court should not, absent special circumstances, order certain discovery, but should rather stand by, ready to prod or force unwilling parties to make required disclosure.

My opinion in *Williams v. Patterson* did not and does not stand for the proposition that a court may *never,* consistent with the Pennsylvania or Federal rules of discovery, compel a party to provide a signed authoriza-tion in order to give another party access to relevant discovery materials. There is ample support for requiring such signed authorizations, as well as for judicial imposition of sanctions upon parties who frivolously refuse to provide such authorizations. *See e.g., Horace v. Bechtel,* 1986 WL 3955 (E.D.Pa. 1986); *Sklagen v. Greater Southeast Community Hosp.,* 625 F.Supp. 991, 992 (W.D.Okl.1984); *Granberg v. Ashland County,* 590 F.Supp. 1005, 1011–12 (W.D.Wisc. 1984); *Lukaszewicz v. Ortho Pharmaceutical Corp.,* 90 F.R.D. 708, 709 (E.D.Wisc.1981); *Fleming v. Gardner,* 84 F.R.D. 217, 218 (E.D.Tenn.1979).

Instantly, defendant has shown the relevance of the requested Social Security Administration disability file, and the file is undisputedly within plaintiff's possession and control. Defendant is entitled to discovery of the disability file pursuant to Fed.R.Civ.P. 26 and 34. Plaintiff has not shown how the file is either privileged, irrelevant, or embarrassing, especially in light of the fact that plaintiff placed his physical condition in issue by filing this suit. *See Sklagen v. Greater Southeast Community Hosp.,* 625 F.Supp. at 992.

It is therefore ORDERED, that plaintiff shall within twenty (20) days (1) produce the requested Social Security Administration disability file, or (2) provide defendant Aetna with a signed authorization enabling Aetna to obtain release of the disability file. If plaintiff objects to discovery of any portion of the disability file, he may file with the Court his specific objections and the reasons therefor.