## Ihnat v. Pover

WETTICK, *J.*, December 16, 1997—There are between 200 and 500 lawsuits pending in this court involving alleged improper sales practices of insurance companies. Through prior court orders, these cases have been assigned to me. The litigants are represented by more than 20 law firms. Through a series of status conferences, counsel identified 19 common issues of law to be resolved at this time.

In this opinion, I consider only the four common issues of law that address plaintiffs' statutory bad faith claims based on 42 Pa.C.S. §8371:[1]

## "BAD FAITH STATUTE CLAIMS

"Issue 1. Whether 42 Pa.C.S. §8371, governing bad faith conduct by an insurance company, by its terms, is limited to actions for an insurer's failure to pay a claim under a policy?

"Issue 2. Whether a cause of action exists against an insurance agent under Title 42 Pa.C.S. §8371?

"Issue 3. Whether alleged misrepresentations occurring during the sale and solicitation of an insurance policy are sufficient to state a claim under Title 42 Pa.C.S. §8371 against either an insurance company or an insurance agent?

"This issue may arise in many factual contexts, including, but not limited to:

"(a) when it is alleged that agents of an insurer approached individuals with existing policies and induced them to use the accumulated value in those policies to fund new policies either by surrendering them, taking loans from them or by withdrawing their accumulated dividends and/or cash value;

"(b) when it is alleged that agents of an insurer induced individuals to purchase insurance policies based on representations that they were retirement or savings plans; or

"(c) when it is alleged that agents of an insurer induced individuals to purchase insurance policies based

---

1. The remaining 15 common issues of law are considered in a separate opinion and order of court addressing common issues nos. 5-19.

on misrepresentations concerning the length of time the purchaser would be required to pay premiums on those policies.

"Issue 4. Whether 42 Pa.C.S. §8371 is to be applied retroactively to transactions that occurred prior to its effective date? This issue may arise in many factual contexts, including, but not limited to, allegations that conduct took place prior to the enactment of the statute but that the harm is ongoing or that some of the alleged conduct occurred subsequent to the enactment of the statute."

This litigation involves three general categories of claims: vanishing premiums, replacement transactions, and retirement or savings plans.

Plaintiffs in the vanishing premiums category were not necessarily holders of existing life insurance policies. Insurance agents allegedly induced these persons to purchase life insurance policies by fraudulently representing that these policies would be fully funded through a premium payment of a specified amount paid for a fixed period of time. The insurance agents made these representations with misleading policy illustrations which used unrealistically high interest rates to support their position that at the end of the specified time period, the income which the policy reserve generated would be sufficient to pay the remaining premiums. The insureds did not understand that the representations were based on unrealistic examples and that the insurance company was, in fact, guaranteeing rates of return that were so much lower than the agents' illustrations as to require payments almost indefinitely.

Plaintiffs in the replacement transactions category were holders of existing life insurance policies with substantial policy reserves. It is alleged that agents of the insurance companies falsely represented that these

policyholders could obtain additional coverage at virtually no additional cost by canceling their existing policies and using their policy reserves to finance new policies or by borrowing against the existing policies to pay for the new policies. The policyholders were not told that the cash from the existing policies together with the payment of the additional premiums provided for in the new policies would in all likelihood be insufficient to maintain the new policies for the remainder of the insureds' lives.

Plaintiffs in the retirement or savings plans category did not necessarily hold existing policies with the insurance companies. These persons sought to establish retirement or savings plans. It is alleged that agents for the insurance companies, identifying themselves as investment, retirement, or financial advisors rather than as insurance agents, sold them life insurance while leading them to believe that they were investing their funds in retirement or savings plans having an added feature of life insurance. The brochures and advertising materials furnished to these plaintiffs did not identify the product being sold as life insurance. These plaintiffs claim they did not know that they were paying for life insurance, including administrative expenses, commissions, and other fees applicable to persons who are purchasing life insurance, and that the only funds that would be available to plaintiffs would be the cash surrender value of a whole life insurance policy.

Through issues 1-4, defendants seek dismissal of plaintiffs' bad faith claims, based on the Judicial Code, 42 Pa.C.S. §8371, which provides remedies for bad faith conduct toward an insured. Section 8371 reads as follows:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith

toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

## A.

I initially address Issue 2. Defendant insurance agents contend that a cause of action does not exist against an insurance agent under section 8371. I agree. This section applies only where the court finds that "the insurer" has acted in bad faith toward the insured. If an insurance agent and an insurer are one and the same, the actions of the insurance agent toward the insured will subject the insurance company to liability under section 8371. Thus, there would be no reason to extend section 8371 to an insurance agent. If, on the other hand, the insurance agent and the insurance company are not one and the same, I have no reason to believe that the legislature intended to provide a remedy against insurance agents under a statutory provision that is limited to the situation in which a court finds that the "insurer" has acted in bad faith toward the insured.

## B.

I next address Issue 4. Defendants seek dismissal of any bad faith claims based upon transactions that occurred prior to July 1, 1990, the effective date of section 8371. This issue has been resolved by the Pennsylvania appellate courts. Recovery is permitted under section 8371 for bad faith actions taken by an insurance

company on or after the effective date of this legislation even if the policy was issued prior to that date. However, section 8371 cannot be applied to bad faith conduct occurring prior to its effective date. *Okkerse v. Prudential Property and Casualty Insurance Co.,* 425 Pa. Super. 396, 400-01 n.2, 625 A.2d 663, 665-666 n.2 (1993).

The insurance companies correctly assert that section 8371 cannot be applied to misconduct occurring prior to July 1, 1990, on the ground that the insurance companies continue to reap the benefits of the misconduct. This is no different from the situation in which an insurance company denied coverage prior to the effective date of the bad faith statute and thereafter did not change its position. See *Johnson v. Beane,* 541 Pa. 449, 454 n.3, 664 A.2d 96, 99 n.3 (1995); *Kacinko v. John Hancock Variable Life Insurance Company,* no. 1284 of 1995 at 7-8 (C.P. Westmoreland 8/22/95) (Appendix to brief of Life Insurance Companies exhibit U); *Palyszeski and Goodrich v. State Farm Insurance Co.,* 140 P.L.J. 320 (1992); *Hallas v. New York Life Insurance Co.,* 140 P.L.J. 44 (1991).

## C.

I next address Issues 1 and 3. I initially consider whether a section 8371 claim may be raised against an insurance company based on an agent's fraudulent misrepresentations that induced existing policyholders to fund new policies with the policy reserves of their existing policies. Defendants contend that under the case law, a bad faith claim against an insurance company is limited to the company's failure to pay a claim under the policy.

The language of section 8371 is not restricted in this fashion; it provides that a court may grant relief

whenever an insurer has acted in bad faith toward an insured. I agree with plaintiffs that if the legislature had intended to limit section 8371 to bad faith refusals to pay claims, it would have used more restrictive language. For example, the legislature could have included a definition of the term "bad faith" which defined bad faith in this fashion. Or it could have limited section 8371 to "an action to obtain benefits under an insurance policy" (in contrast to the existing legislation which covers "an action arising under an insurance policy"). Or it could have limited section 8371 to situations in which the insurer "has acted in bad faith toward the insured [in the manner in which it handled claims made under an insurance policy]." Furthermore, a court shall not assume that the legislature intends for remedial legislation addressing unfair business practices to be narrowly construed. See *Commonwealth v. Monumental Properties Inc.,* 459 Pa. 450, 329 A.2d 812 (1974).

The insurance companies argue that when the legislature uses the term "bad faith" in an insurance context, it is referring only to the bad faith denial of coverage. I disagree. Approximately 15 years prior to the enactment of section 8371, the legislature enacted the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, no. 205, 40 P.S. §1171.1 et seq., in order to prevent insurance companies, insurance agents, and insurance brokers from engaging in unfair methods of competition and unfair or deceptive acts or practices. 40 P.S. §1171.4. The Act's descriptions of unfair methods of competition and unfair or deceptive acts or practices cover the entire scope of the insurance transaction including solicitations, cancellations/renewals, and payments of claims. In 1981 in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501,

431 A.2d 966 (1981), the Pennsylvania Supreme Court declined to create a cause of action in tort based on trade practices of an insurance company that constitute unfair acts or practices under the Unfair Insurance Practices Act. Thus, as of the date of the enactment of section 8371, the legislature had already enacted legislation to deter insurance trade practices that it had characterized as unfair methods of competition and unfair or deceptive acts or practices, and the Pennsylvania appellate courts had ruled that this legislation did not provide for a private cause of action.

The purpose of both the Unfair Insurance Practices Act and section 8371 is to deter insurance companies from engaging in unfair conduct. The new legislation added a private cause of action while using the general term "bad faith" to describe conduct that triggers the cause of action. Since the earlier legislation includes a detailed description of insurance practices that constitute unfair methods of competition and unfair or deceptive acts or practices, there is no reason to believe that the legislature, when using the term "bad faith," created an entirely different regulatory scheme for actions brought under section 8371.

Defendants contend that the provisions of the Unfair Insurance Practices Act should not be considered because the legislature was simply reversing the *D'Ambrosio* ruling that refused to recognize the tort of a bad faith refusal to pay a claim. For the reasons that I have discussed, it is far more likely that in enacting section 8371 the legislature was considering its previous legislation rather than the specific holding of a Pennsylvania Supreme Court decision. Furthermore, the opinion of the Pennsylvania Supreme Court in *D'Am-*

*brosio* that declined to create a cause of action in tort based on an insurance company's bad faith conduct defined the legal issue that it was addressing in terms of whether a tort remedy will be provided where insurance companies have engaged in trade practices determined to be unfair methods of competition or unfair or deceptive acts or practices under section 5 of the Unfair Insurance Practices Act, 40 P.S. §1171.5. In its opinion, the court, referring to sections 4 and 5 of the Unfair Insurance Practices Act, said:

"Although the seriousness of *'bad faith'* conduct by insurance carriers cannot go unrecognized, our legislature has already made dramatic, sweeping efforts to curb the bad faith conduct." *Id.* at 505, 431 A.2d at 969. (emphasis added)

The court also said:

"There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action. . . . Surely it is for the legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous.

"Our conclusion that the Unfair Insurance Practices Act serves adequately to deter *bad faith* conduct applies not only to appellant's attempt to recover punitive damages but also to his attempt to recover damages for 'emotional distress.' " *Id.* at 507-508, 431 A.2d at 970. (emphasis added)

Consequently, if the purpose of section 8371 was to legislatively overrule *D'Ambrosio,* this would mean that the legislature was creating a private cause of action

under section 8371 to deter the bad faith conduct described in section 5 of the Unfair Insurance Practices Act.

For defendants' argument to have merit, I would have to conclude that the legislature was concerned only with reversing the fact situation of *D'Ambrosio* (a claim by an insured to recover proceeds). Thus, its intent in using the term "bad faith" was to legislatively affirm the *D'Ambrosio* court's rationale while carving out an exception for a bad faith refusal to pay a claim. Such arguments may be appropriate when courts are attempting to define the scope of prior opinions, but the legislature does not express its intentions in this fashion.

Defendants offer three additional arguments in support of their position that section 8371 is limited to the refusal to pay benefits.

First, defendants argue that the provision within section 8371 permitting a court to award interest on the amount of claim from the date that the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent shows that section 8371 applies only to a bad faith refusal to pay a claim. However, other provisions of section 8371 provide for an award of punitive damages against the insurer and the assessment of court costs and attorney's fees against the insurer. While plaintiffs correctly assert the legislature would have included these remedy provisions if it had intended for section 8371 to cover only the bad faith failure to pay a claim, these identical provisions would have been included if the legislature had intended for section 8371 to cover any conduct that constitutes an unfair act or practice.

Second, defendants argue that section 8371 should be narrowly construed because of the protections afforded by the Unfair Trade Practices and Consumer

Protection Law (Act of November 24, 1977, P.L. 1166, 73 P.S. §201-9.2). In *Knox v. Worldwide Insurance Group,* 140 P.L.J. 185 (1992), I ruled that since section 8371 of the Judicial Code is specifically directed to insurance companies while the Consumer Protection Law is more general, claims under the Consumer Protection Law should be dismissed as being duplicative where they overlap. Furthermore, the Consumer Protection Law covers only consumer transactions. Section 8371, on the other hand, applies to any insureds. Consequently, the purpose of section 8371 is not to provide more protection to persons already protected under the Consumer Protection Law; instead, this legislation has an independent purpose.

Third, defendants contend that the term "bad faith" should be narrowly construed because it is not defined and the legislature would not have intended to give courts broad discretion to decide when insurance companies should be sanctioned under section 8371. This argument does not support a ruling that the legislature intended for section 8371 to apply only to refusals to pay benefits. It only supports a ruling that section 8371 should not be construed to reach conduct which is otherwise permissible under Pennsylvania law. Courts are not creating a code of conduct for insurance carriers when they permit a section 8371 claim to be based on activity that constitutes common-law fraud or that is described as an unfair act or practice in the Unfair Insurance Practices Act.

In summary, there are two requirements that an insured must meet to establish that the insurer has acted in bad faith toward the insured. The insured must first establish the breach of a known duty; this requirement can be met by showing that the insurer engaged in practices that constitute common-law fraud or that are

described as unfair acts or practices in section 5 of the Unfair Insurance Practices Act. Next, the insured must establish a motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. See *Terletsky v. Prudential Property and Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994).

I have not cited case law in support of my position that section 8371 is not restricted to lawsuits based on an insurance company's failure to pay a claim under the policy because no Pennsylvania appellate court cases have addressed this issue.

Defendants contend that *Coyne v. Allstate Insurance Co.,* 771 F. Supp. 673 (E.D. Pa. 1991); *Terletsky v. Prudential Property and Casualty Insurance Co., supra,* and *Romano v. Nationwide Mutual Fire Insurance Co.,* 435 Pa. Super. 545, 646 A.2d 1228 (1994), support defendants' restricted reading of the term "bad faith." In *Coyne v. Allstate Insurance Co., supra,* the court rejected the insurance company's contention that the failure of section 8371 to define "bad faith" renders it unconstitutionally vague. The court's opinion included the following statement:

"In the insurance context, the phrase 'bad faith' has acquired a peculiar and universally acknowledged meaning.

*"Insurance.* 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. Black's Law Dictionary 139 (6th ed. 1990) (citations omitted)." *Id.,* 771 F. Supp. at 677.

The *Terletsky* and *Romano* opinions also include the same quotation.[2]

These three cases involved only a refusal to pay. Consequently, the courts were developing a bad faith definition applicable to a section 8371 claim based on a refusal to pay. Nothing in any of these opinions suggests that the writers were intending to restrict section 8371 to situations involving a refusal to pay.

To the contrary, in the *Coyne* case, the court stated that the perimeters of section 8371 may be discerned by reference to the Pennsylvania Unfair Insurance Practices Act which delineates the unfair and deceptive acts or practices that it proscribes. *Id.* at 678. Also, in the *Romano* case, the court stated that:

"We find that a trial court, when evaluating a section 8371 petition or motion for costs and/or counsel fees for the 'bad faith' of an insurer, may look to: (1) other cases construing the statute and the law of 'bad faith' generally; (2) the plain meaning of the term(s) used in the statute; and/or (3) other statutes upon the same or similar subjects (like the UIPA in this case), *MacFarland [v. U.S. Fidelity & Guarantee Co.,* 818 F. Supp. 108 (E.D. Pa. 1993)], *Rottmund [v. Continental Assurance Co.,* 813 F. Supp. 1104 (E.D. Pa. 1992)], and *Coyne, supra." Romano, supra* at 555, 646 A.2d at 1233.

---

2. If section 8371 is limited to a "frivolous or unfounded refusal to pay proceeds of a policy," section 8371 would not apply to a bad faith failure to act upon or to affirm or deny coverage within a reasonable time. Defendants apparently recognize that this position is not tenable so they would "expand" this "peculiar and universally acknowledged meaning" of bad faith to cover any bad faith conduct in connection with any claims made under an insurance policy.

Furthermore, although *Romano* involved a wrongful refusal to pay, the court used the same analysis that I have used to support its ruling that the trial court had improperly dismissed a section 8371 claim on the ground that the claim was based on a violation of the Unfair Insurance Practices Act. The *Romano* opinion said that the case law holding that the Pennsylvania Legislature had not intended for the Pennsylvania courts to make determinations as to whether the activities of an insurance company/insurance agent constitute unfair acts or practices under the Unfair Insurance Practices Act does not apply to section 8371 claims because the "parameters of section 8371 may also be discerned by reference to analogous Pennsylvania insurance law." *Id.* at 554, 646 A.2d at 1233. The court said that although a court lacks jurisdiction to impose sanctions under the Unfair Insurance Practices Act, "we find that the rules of statutory construction permit a trial court to consider, either sua sponte or upon the request of a party, the alleged conduct constituting violations of the UIPA or the regulations in determining whether an insurer, like Nationwide, has acted in 'bad faith.' " *Id.*

Both sides cite trial court rulings that cursorily address the scope of section 8371. Defendants cite:

(1) *Jung v. Nationwide Mutual Fire Insurance Company*, 949 F. Supp. 353, 359 (E.D. Pa. 1997) (footnote omitted), a section 8371 claim based on a refusal to pay benefits that included the following statement: "Plaintiffs cannot sustain a bad faith claim on these facts. Section 8371 was passed by the Pennsylvania Legislature specifically to rectify the lack of a common-law remedy for bad faith conduct in denying an insured's claim. Beyond that, '[t]here is no legislative

history that specifically concerns this statute, which was enacted as part of a comprehensive insurance bill.' *Younis Brothers v. Cigna Worldwide Insurance Co.,* 899 F. Supp. 1385, 1396 (E.D. Pa. 1995), *aff'd,* 91 F.3d 13 (3d Cir. 1996), petition for cert. filed 10/28/96. It is clear, however, that the crux of a bad faith claim under section 8371 is the denial of coverage by an insurer when it has no good reason to do so. *Grove v. Aetna Casualty & Surety Co.,* 855 F. Supp. 113, 115 (W.D. Pa. 1993) (citations omitted) ('The majority of courts to have considered the issue have held that "bad faith conduct," in the context of section 8371 refers to a bad faith denial of coverage.')."

(2) *Younis Brothers & Co. v. Cigna Worldwide Insurance Co., supra,* 899 F. Supp. at 1396, where the court dismissed a section 8371 claim on the ground that the insured's underlying claims for insurance benefits were without merit: "No common-law action for bad faith conducted by an insurer existed under Pennsylvania law prior to the enactment of section 8371. See *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981). Rather, the Pennsylvania Legislature regulated claim investigation practices through the Unfair Insurance Practices Act which was held to be the exclusive remedy for alleged improper or tortious conduct by an insurer prior to the enactment of section 8371. 40 P.S. §1171.5(a)(10); see *Williams v. State Farm Mutual Auto Insurance Co.,* 763 F. Supp. 121, 123-25 (E.D. Pa. 1991). I find no basis for a conclusion that the legislature intended to create a broad ranging private enforcement mechanism with respect to the handling of claims via section 8371. I therefore conclude that an insurer's in-

vestigation and adjustment of a claim does not support an action under section 8371 where an insured's claim for coverage fails upon its merits and the insurer's actions in handling the claim would not have been actionable under Pennsylvania common law prior to the enactment of section 8371."

(3) *Kurtz v. American Motorists Insurance Co.,* 1997 WL 117008 at 3-4 (E.D. Pa. 1997) (reply brief of Life Insurance Companies exhibit B), where the court in dismissing a section 8371 claim based on a refusal to renew an insurance policy said: "Additionally, section 8371 appears to have been enacted in response to the Pennsylvania Supreme Court's decision in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981). In *D'Ambrosio,* the plaintiff filed an action against his insurance company for 'bad faith' conduct in connection with the nonpayment of a claim for damage to his property. *Id.* at 968. The court ruled that there was no need to construct a first party 'bad faith' cause of action. *Id.* at 970. Consequently, it is reasonable to infer that in enacting section 8371, the legislature intended to protect policyholders from bad faith conduct associated with the handling and payment of claims. See *Polselli [v. Nationwide Mutual Fire Insurance Co.],* 23 F.3d at 750 [(3d Cir. 1994)]; C. Hasson & M. Nerone, *The 1990 Pennsylvania Auto Insurance Law: An Analysis of 'Bad Faith' and the 'Limited Tort Option,'* 29 Duq. L.Rev. 619, 631 (1991) (The court reasoned that if the legislature believed the insurance industry required a deterrent to safeguard the interests of the insured, then the legislature should establish standards to provide this protection. Therefore, one can infer that the legislature enacted section 8371 to provide this protection.)."

(4) *Kriebel v. Metropolitan Life Insurance Co.*, A.D. no. 95-10666 at 9 (C.P. Butler, June 23, 1997), where the Honorable Martin J. O'Brien dismissed a section 8371 claim based on plaintiffs' allegations that they were told that they were purchasing retirement plans, not just life insurance policies: "The Pennsylvania Superior Court has interpreted statutory bad faith under 42 Pa.C.S. §8371 to be a failure of the insurer to pay a claim or proceeds of a policy. *Terletsky v. Prudential Property Casualty Insurance Co.*, [437] Pa. Super. [108], 124-25, 649 A.2d 680, 688 (1994). This court adopts the position that a claim for statutory bad faith must establish a failure to pay on a claim or proceeds of a policy. The court does not broadly interpret this statute to apply to actions merely centering around an insurance policy as the Court of Common Pleas in Lebanon County did in *Vest v. Metropolitan Life Insurance Co.*, A.D. no. 95-00421 (Lebanon County, April 9, 1997)."

Plaintiffs, on the other hand, cite:

(1) *Axelson v. Tongue, Brooks & Company*, 1994 WL 161377 at 2 (E.D. Pa. 1994) (footnote omitted) (Appendix to brief of defendant Life Insurance Companies exhibit M), where the court permitted the plaintiff to base a section 8371 claim on fraudulent misrepresentations that induced the plaintiff to enter into an insurance contract: "In my view, neither *Dercoli* nor any other case cited by counsel or found by the court establish defendant's assertions as principles of Pennsylvania law, and I note that the statute does not so limit its application. I conclude that the allegations in plaintiff's complaint with respect to its bad faith claim under section 8371 are sufficient to withstand a motion to dismiss."

(2) *U.S. Metal & Coin & Jewelry Co. v. Jewelers Mutual Insurance Company*, 1996 WL 494149 at 3

(E.D. Pa. 1996) (Memorandum of Berger Law Firm plaintiffs exhibit 4), where the court considered the merits of a section 8371 claim based on allegations that the insurance company in bad faith issued a mid-policy notice that it would not renew the policy: "Although this definition [the definition of bad faith in Black's Law Dictionary] addresses only one type of claim (failure to pay), the statute reaches much more broadly to any insurer that 'has acted in bad faith toward the insured.' "

(3) *Messina v. Liberty Mutual Insurance Company,* 1996 WL 368991 at 3 (E.D. Pa. 1996), a section 8371 claim based on a bad faith breach of a contractual duty to arbitrate a coverage dispute, where the court said:

"While the majority of courts to have considered the issue have held that bad faith conduct in the context of section 8371 refers to a bad faith denial of coverage, alleged conduct constituting violations of the Unfair Insurance Practices Act ('UIPA'), 40 Pa.C.S. §1171.1 et seq., can also be considered in determining whether an insurer acted in bad faith. *Certainteed Corp. v. Federal Insurance Co.,* 913 F. Supp. 351, 360-61 (E.D. Pa. 1995)."

(4) *Virag v. Martini,* A.D. 94-11014 at 5 (C.P. Butler, February 5, 1996) (Appendix to brief of Life Insurance Companies, exhibit BB), where Senior Judge Kiester permitted a section 8371 claim to be based on a misrepresentation in the sale of a life insurance policy: "Defendants contend that section 8371 applies to 'bad faith' associated with any frivolous or unfounded refusal to pay the proceeds of a policy. Although this is the traditional definition of 'bad faith,' we do not find recovery for 'bad faith' conduct under this section to be so narrowly defined."

Not surprisingly, both plaintiffs and defendants find support for their respective positions in *Monticello Insurance Company v. Spinning Wheels Inc.,* 144 P.L.J. 488 (1996), a case in which I ruled that section 8371 did not reach a premium dispute. In *Monticello Insurance,* the defendant's section 8371 claim was not based on any conduct that would violate the Unfair Insurance Practices Act or that would constitute misconduct under tort law. It also did not involve the breach of any duty of good faith that the law imposes on an insurance company. I dismissed the section 8371 claim because I agreed with the insurance company that section 8371 should not reach conduct that does not violate any duties recognized by Pennsylvania law. Thus, in *Monticello Insurance,* I never considered the arguments raised in this litigation.

Since I reject the argument that section 8371 is restricted to lawsuits based on an insurance company's failure to pay a claim under the policy, I next consider whether section 8371 encompasses a lawsuit based on allegations that the insurance company fraudulently induced an existing policyholder to make additional purchases of life insurance that resulted in the loss of the policyholder's existing policy reserve and other benefits. Section 8371 covers "an action arising under an insurance policy" where the insurer "has acted in bad faith" toward the insured. The lawsuit of an existing insured is an action arising under an insurance policy because the section 8371 claims are based on the insured's loss of benefits provided by the existing policy as a result of the insurer allegedly acting in bad faith toward the insured.

Conduct which constitutes common law fraud that resulted in the policyholders' loss of benefits constitutes "bad faith" on the part of the insurer. The plain meaning

of "bad faith" reaches fraudulent practices on the part of an insurance company directed toward an existing policyholder that are intended to induce the policyholder to unknowingly give up the policy reserve and other benefits of the policy. Furthermore, the provisions of the Unfair Insurance Practices Act support the conclusion that such fraudulent conduct constitutes bad faith within the meaning of section 8371. Under section 5 of the Act (40 P.S. §1171.5), unfair methods of competition and unfair and deceptive acts or practices include publications, statements, sales presentations, and omission comparisons which misrepresent the benefits, advantages, conditions, or terms of any insurance policy (section 1171.5(a)(1)(i)); acts or practices which misrepresent the premium overcharge (commonly called dividends or share of the surplus) to be received on any insurance policy (section 1171.5(a)(1)(ii)); acts or practices which use any name or title of any insurance policy or class of insurance policies that misrepresent the true nature of these policies (section 1171.5(a)(1)(v)); acts or practices which are misrepresentations for the purpose of inducing or tending to induce the lapse, forfeiture, exchange, conversion, or surrender of any insurance policy (section 1171.5(a)(1)(vi)); and acts or practices which are misrepresentations for the purpose of effecting a pledge or assignment of or effecting a loan against any insurance policy (section 1171.5(a)(1)(vii)). Unfair methods of competition and unfair or deceptive acts or practices also include making false or fraudulent statements or representations relative to an application for an insurance policy for the purpose of obtaining a fee, commission, money, or other benefit (section 1171.5(a)(12)).

I next consider whether individuals who were not policyholders may bring a bad faith action under section 8371 where it is alleged that agents of the insurance company induced these individuals to purchase insurance policies based on misrepresentations as to the nature of the transaction and/or based on misrepresentations concerning the length of time the purchaser would be required to pay premiums. For the reasons that I discussed in the previous paragraph of this opinion, this fraudulent conduct constitutes "bad faith." However, since these plaintiffs were not policyholders at the time the insurance company engaged in the conduct about which they complain, the insurance companies argue that (1) this conduct did not constitute bad faith conduct "toward the insured" and (ii) this is not "an action arising under an insurance policy" within the meaning of section 8371.

I reject defendants' arguments because plaintiffs' claims arise out of insurer-insured relationships. The lawsuits involve insurance policies that defendants issued. Plaintiffs' causes of action are based on allegations that the terms of the insurance agreements as described in the insurance policies that the insurers issued to plaintiffs are not what they were represented to be.

The insurer-insured relationships that are the subject of this litigation are continuing. After the issuance of the insurance policies, the insureds continued to make premium payments and the insurers continued to manage the insureds' policy reserves. Consider, for example, the insured who continued to make payments for what the insured believed to be a retirement plan that were used to pay for life insurance; and the insured who continued to make her $2,000 annual premium to obtain what she believed would be a fully paid $50,000 policy within 10 years.

Since misrepresentations made by the insurer during the negotiations constitute bad faith, there is no apparent reason why the legislature would have intended to exclude coverage under section 8371 where the misrepresentations induced the insureds to purchase insurance. The requirement of an action arising under an insurance policy only precludes recovery where the claim does not depend upon the existence of an insurance policy. The requirement that the insurer has acted in bad faith "toward the insured" restricts section 8371 to bad faith conduct directed toward an insured as opposed to a third party affected by the insurer's bad faith. Consider, for example, the rulings in *Strutz v. State Farm Mutual Insurance Co.,* 415 Pa. Super. 371, 609 A.2d 569 (1992) (accident victim cannot bring a section 8371 claim against the insurance company of the alleged tort-feasor) and *Taylor v. Nationwide Insurance Co.,* AR97-503 (C.P. Allegheny 10/6/97) (Wettick, J.) (section 8371 does not apply to a health care provider's claim for first-party benefits under the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq.). In the present litigation, both requirements are met because plaintiffs' claims arise out of purchases of insurance policies in which plaintiffs are the insureds.

For these reasons, I enter the following order of court:

## ORDER

On December 16, 1997, upon consideration of common issues of law nos. 1-4, it is ordered that:

(1) claims based on 42 Pa.C.S. §8371 may not be raised against the insurance agents;

(2) claims based on 42 Pa.C.S. §8371 may not be based on any conduct occurring prior to the effective date of this legislation;

(3) 42 Pa.C.S. §8371 is not limited to actions for an insurer's failure to pay a claim under a policy; and

(4) claims against insurance companies under 42 Pa.C.S. §8371 may be based on alleged misrepresentations occurring during the sale and solicitation of an insurance policy.